FILED
2011 Jul-28 PM 01:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RITA DEMPSEY, | ) |
|  | ) |
|     Plaintiff, | ) |
|  | ) |
|     v. | )   CIVIL ACTION NO. 10-G-2529-E |
|  | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
|  | ) |
|     Defendant. | ) |
|  | ) |
|  | ) |

## MEMORANDUM OPINION

The plaintiff, Rita Dempsey, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

> (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM PAIN OR OTHER SUBJECTIVE SYMPTOMS

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition)

> and third (reasonably expected to cause pain alleged) parts of the Hand standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.</u>  See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  This same standard applies to testimony about other subjective symptoms.  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  Foote at 1561.  Therefore, if a claimant testifies he suffers from pain or other subjective symptoms at level that would prevent work and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's testimony about pain or other subjective symptoms, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's testimony, or if his reasons are not supported by substantial evidence, the testimony of the plaintiff about his subjective symptoms must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability

claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff in this case was 54 years old at the time of ALJ Mary E. Helmer's decision. The ALJ found that the plaintiff has the following severe impairments: osteoarthritis of the lumbosacral spine, osteoarthritis of the knees, and anxiety. [R. 11]. At the hearing, the plaintiff amended her alleged onset date from February 15, 2003, to February 20, 2007, when she first began receiving regular medical treatment. [R. 36].

On February 20, 2007, the plaintiff was seen at MedHelp, P.C., for "joint pain all over," with lower back pain for the past two to three years, but had worsened in the past month. [R. 198]. She was diagnosed with very mild arthralgias, chronic low back pain and irritable bowel with weight gain. [R. 199]. She was then seen at Regional Medical Center in Anniston on June 23, 2007, when she complained of lower abdominal pain. [R. 160-61]. She was diagnosed with acute lower abdominal pain and acute lower abdominal muscle spasm. [R. 161]. X-rays of her abdomen and chest showed no acute disease. [R. 172].

On September 12, 2007, she was seen by J.R. Payne, M.D., at Anniston Orthopaedic Associates, for continued complaints of back pain. Dr. Payne noted:

> 52 year old female comes in complaining of back pain. She sees a medical physician in B'ham who placed her on Naprosyn b.i.d. States that the Naprosyn has helped the arthritis in her knees, ankle and feet <u>but it has not helped her back</u>. She states the pain is in the back. No weakness or numbness. No bowel or bladder problems. There is some radiation to the buttocks. <u>Straight leg raising positive for back and buttock symptoms</u>. No true sciatic leg symptoms. Motor sensory and deep tendon reflexes seem to be okay. No neurological deficit is noted. Spinal mobility is about 80%.
>
> Xrays are carried out of the lumbar spine as well as an AP pelvis film. ON the lumbar spine film <u>there is sclerosis in the posterior facets indicating posterior facet arthritis</u>.
>
>> Sclerosis seems to be at the 3,4 4,5 and 5,1 area. On the lateral view the disc space seem to be fairly well maintained. Some traction spurs are present at 2,3. AP pelvis xrays reveals [sic] good maintenance of the joint space. The hips look good. No pathological lesions, no major degenerative changes are seen. No evidence of fractures.
>>
>> ASSESSMENT: <u>Significant back pain</u>, possible the patient has an underlying disc disease.

> PLAN: Gone ahead and given her Toradol 60 mg IM. Placed her on Naprosyn 500 mg 1 b.i.d. Darvocet N-100 #30 and a refill. Flexeril 10 mg #30 and a refill. If she doesn't improve the next step would be an epidural injection and if she continues to have problems an MRI scan will be necessary.

[R. 179].(emphasis added)  A positive SLR (Straight Leg Raise test) is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine. (See Listing 1.00(B), ¶5)  The SLR test is also known as Lasègue's sign: "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. This distinguishes the disorder from disease of the hip joint." Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

      On March 3, 2008, she was seen by David Chalk, M.D., when her chief complaint was anxiety. [R. 226]. Her current medications were Clonazepam for anxiety, and Lortab 10 for pain, and Cyclobenzaprine Hcl (Flexeril) for muscle spasms. Id. Dr. Chalk's impression was palpitations and panic disorder, for which he prescribed Paxil. Id. On October 8, 2008, she returned to Dr. Payne, the orthopedist, for intermittent problems with her knees. She told Dr. Payne she had fallen twice in the last two months because her knees give away. [R. 224]. On exam, she had crepitus and popping on motion with both knees. Id. Dr. Payne assessed osteoarthritis of the knees and recurring sprains of the left ankle. Id. He gave an injection in the right knee and prescribed an exercise plan for her ankles. Id.

On January 20, 2009, she saw Dr. Chalk for follow up. Her main complaint was abdominal pain and Dr. Chalk's plan was to refer her to a GI for workup and colonoscopy. [R. 228]. He also increased her Paxil dosage to 20 mg. Id. On May 13, 2009, her chief complaint was an irritable bowel. Dr. Chalk prescribed Levbid for IBS and Immodium for diarrhea. [R. 229].

At the hearing, the plaintiff testified that her low back pain was a six or seven "almost every day," and that on pain medication it is reduced to a three or four. [R. 29]. She testified to dizziness while taking Darvocet. Id. She also testified to having two to three panic attacks a month. Id. Her symptoms were, "Heart palpitations, dizziness, and you just feel like you're going to pass out." [R. 30]. Paxil helped, but caused dizziness. Id. She also testified that her IBS caused cramping and diarrhea for about six to eight hours, but her medication did help that. [R. 31].

The ALJ found her pain testimony lacked credibility. [R. 15].

> The claimant alleged back pain with limitations, anxiety and irritable syndrome. She alleged side effects from her medications. While the evidence reflects the claimant receives treatment for her impairments and may experience some problems, the degree of severity and limitations alleged that all work would be prevented are not corroborated by the medical evidence of record.

Id. The ALJ mentioned that no treating doctor has given her restrictions from work activity. [R. 16].

> While x-rays of the claimant's back reflected posterior facet arthritis, they do not reflect the claimant has spinal or cervical impairments on

9

> radiological evidence that are customarily considered to be very severe. The claimant's impairments have not been treated surgically, nor has surgery been recommended. Dr. Payne noted if the claimant's back pain continued, she may have to have an injection or an MRI. The record does not reflect the claimant had to have this done. The radiological evidence does not establish impairments such as marked spinal stenosis, nerve root compression, ruptured disc, herniated disc, spondylosis, spondylolisthesis or other serious nerve root pathology. No physician has recommended or agreed to perform surgery for any impairment found. The claimant testified to pain at levels of "6" to "7" daily from her back pain, but the record does not reflect the claimant has undergone extensive treatment of the kind customarily given for intractable pain such as epidural injections, a spinal cord stimulator implant or a TENS unit. The claimant does not participate in physical or other rehabilitative services for pain. The claimant has been prescribed pain medications and reported that she had side effects, but the evidence of record does not support this allegation. In fact, the few times she presented for care, she did not allege side effects. She has not presented to emergency rooms due to her back or knee pain or side effects. The evidence reflects she has some impairments, as noted by the objective evidence; however, they are not the severity that physicians have limited her work activity or even restricted her from work activity.

[R. 16]

In finding the plaintiff's pain testimony not credible, the ALJ failed to properly consider the plaintiff's continued complaints of and treatment for pain. The medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). As Judge Allgood

10

observed in Lamb v. Bowen: "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain. No examining physician ever questioned the existence of appellant's pain. They simply found themselves unable to cure the pain." 847 F.2d 698 (11th Cir. 1988).

As for the plaintiff's anxiety and panic attacks, the ALJ found that her symptoms improved with medication. [R. 17].

> She did not seek help again until January 20, 2009, (after her date [last] insured) when the dosage of Paxil was increased. The claimant testified that she did not receive mental health treatment due to her financial situation; however, the evidence does not reflect that she sought information about any clinics that would consider one's financial situation or that she presented to the hospital or other physicians for care. The evidence reflects the claimant is able to perform the activities generally associated with day-to-day living. She is able to perform her own self care, cooks small meals and washes clothes. She sometimes goes out to plant flowers and attends church once weekly for about an hour. She occasionally drives. The evidence does not reflect the claimant has symptoms of the severity associated with her anxiety, panic disorder or symptoms of depression that are disabling. Her own description of daily activities do [sic] not reflect a mental state of such marked restriction of activities of daily living, difficulties in maintaining her social functioning or in her ability to maintain concentration, persistence or pace. She performs activities of daily living, attends church weekly, and keeps her self care and light house duties on a consistent basis. She reads and watches movies and records reflect she had improvement with medications. Her allegations of severely restricting mental impairments that would eliminate her ability to perform all work activity are not supported by the record.

[R. 17].

The activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain.

11

The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989). The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

Moreover, the plaintiff testified that during a panic attack, she doesn't "want to be around anybody and it just makes you want to hide away, not go anywhere. . . ." [R. 35]. Taking Paxil relieves these symptoms, but makes her dizzy and "the best thing to do is just to sit in the recliner for a few hours." [R. 37]. On May 1, 2007, David M. Hopper, M.D., noted that "she is under significant stress and has problems being around people." [R. 186]. She told Dr. Hopper that "her problem has worsened to the point where she does not wish to be around others at church." Id. The diagnoses by treating physicians of chronic anxiety and panic attacks support the plaintiff's complaints of severe anxiety which would affect her ability to interact appropriately with co-workers and supervisors in a work setting.

In her decision, the ALJ found that the plaintiff was unable to perform her past relevant work, but found that the plaintiff could perform a reduced range of light work with a sit/stand option. [R. 14, 17]. As of her

amended alleged onset date, the plaintiff was 52 years old, which places her in the category of "closely approaching advanced age." At the hearing, the ALJ posed a hypothetical question to the vocational expert which assumed a person of the same age as the plaintiff who was a high school graduate with transferable skills to work only relating to personal, verbal and written skills. [R. 41]. The VE testified that if her interaction with others, including co-workers, was limited, that would "preclude the transferability of those skills because they're largely, largely interpersonal communications skills." Id. Given the plaintiff's physical limitations, including pain, from lumbar degenerative disc disease and osteoarthritis of her knees, as well as the plaintiff's non-physical impairments, the plaintiff would be limited to nor more than sedentary work. As such, Medical Vocational Guideline 201.14 would direct a finding of disabled. Taking the testimony of the plaintiff as true, she is disabled within the meaning of the Social Security Act.

## CONCLUSION

Therefore, the Commissioner failed to carry her burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 28 July 2011.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.